IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HOST AMERICA CORPORATION, a Connecticut corporation, and GLOBALNET ENERGY INVESTORS, INC., a Texas corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>COASTLINE FINANCIAL, INC., an Arizona corporation,<br><br>    Defendant. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW AND MEMORANDUM DECISION**<br><br>Civil No. 2-04-CV-879<br>Judge Tena Campbell |

**INTRODUCTION**

This diversity lawsuit arises out of a dispute over the ownership of merchandise. Defendant Coastline Financial claims that the merchandise was initially owned by its tenant, K.W.M. Electronics, but that Coastline gained ownership after it seized the merchandise when foreclosing on a lessor's lien against K.W.M. Host America disagrees, arguing that it was the rightful owner of the seized merchandise and that Coastline has no valid claim to that merchandise. A trial was held before the court, sitting without a jury. The court now enters its Findings of Fact and Conclusions of Law, in which it explains why it agrees that Coastline is the rightful owner of the merchandise.

1

## PROCEDURAL BACKGROUND

In September 2004, the court issued a preliminary injunction allowing Host America to take possession of the merchandise initially seized by Coastline.  Host America was required to deposit a bond in the amount of $150,000.00.

## FINDINGS OF FACT

### The Parties and Witnesses

Plaintiff Host America is a Colorado corporation.  Host America supplies food, background screening, and energy management to its clients.  Plaintiff Globalnet is a division of Host America.  Globalnet is a Texas corporation.  Defendant Coastline is an Arizona corporation whose primary business is making loans.  K.W.M. is a company that designed, engineered, and manufactured electronics.  K.W.M. leased land and a building in West Jordan, Utah ("the premises") from Coastline.  K.W.M. was not a party to this action.

Charlie Stevenson is the majority owner and chief executive officer of K.W.M.  Mr. Stevenson is also the chief operating officer of Globalnet.  Robert G. Hoag is the principal owner and president of Coastline.

In February 2004, Host America hired Mr. Stevenson to serve as CEO of Globalnet. Although Host America and K.W.M. had discussed merging the two companies, even going so far as signing letters of intent, the merger did not take place.

**The Lease and Judgment Against K.W.M.**

In 2003, Coastline leased the premises to K.W.M. In August 2004, K.W.M. breached the lease agreement and Coastline brought an unlawful detainer action in Utah State Court. On September 3, 2004, the state court issued an order evicting K.W.M. from the premises and a Writ of Attachment authorizing the seizure of "all nonexempt property of defendant K.W.M. Electronics Corporation kept on the premises located at 7172 South Airport Road, West Jordan, Utah . . . ." (Writ of Attach., Ex. A.)[1] Shortly thereafter, Coastline took possession of the premises.

On November 19, 2004, Coastline obtained a default judgment in the amount of $584,831.06 against K.W.M. The judgment reads:

> Coastline has a valid and subsisting lessor's lien on the personal property of K.W.M. brought or kept upon the premises at 7172 and 7134 South Airport Road, West Jordan, Utah 84084 including, but not limited to, all inventory, work in progress, raw materials, equipment, promissory notes, instruments, software, plans, blueprints and schematic drawings (the "Personal Property") for the amount of the judgment.

(Default Judg., Ex. B.) The judgment continues:

> Coastline's lessor's lien is foreclosed and defendant K.W.M. is forever estopped from having or claiming to have any right, title, interest or lien in or to the Personal Property, or any part of it, superior to Coastline's lien.

(Id.)

---

[1]Some of Coastline's exhibits were given both numerical and letter designations. To avoid confusion with Host America's exhibits, the court refers to Coastline's exhibits only by letter.

**The FanSavers**

K.W.M. and Host America agreed that K.W.M. would manufacture a product called FanSavers for Host America after first updating the design. FanSavers are energy saving devices installed in refrigerators. Host America purchased the FanSaver intellectual property and component parts and then delivered the component parts to K.W.M.

When Coastline took over the premises, the FanSavers had not been assembled and there were additional parts that had to be purchased before K.W.M. could complete its work.

**The ENS Boards**

K.W.M. also designed and manufactured ENS boards for Host America. ENS boards are electronic boards used in energy management or energy saving devices. K.W.M. designed and manufactured two types of ENS boards for Host America: light controllers and motor controllers.

K.W.M. possessed ENS boards in various stages of manufacturing and assembly on the premises. There were also component parts, such as raw boards, transistors, and resistors. K.W.M. did not deliver the unfinished ENS boards or the component parts to Host America. When Coastline took possession of the premises following the foreclosure, a few of the unfinished boards were in boxes, but the boxes were not labeled or addressed. Many of the of the ENS boards were on trays in various stages of assembly.

**Payments by Host America to K.W.M.**

Host America gave K.W.M. a check in the amount of $125,000 dated February 9, 2004. (Check, Ex. 2.) The words "Fan Saver" were written on the memo line of the check. Despite

Host America's contention that this check was a prepayment it made to K.W.M. for the work to be done on the ENS boards, the credible evidence showed that, in fact, the check was an advance payment to K.W.M. for the work to be done on the FanSavers. For example, when asked about the purpose of the check, Mr. Stevenson testified: "It [the check] was targeted with the labor and materials and to manufacture 300 fan savers, if required, yes." (Trial Transcript [hereinafter "Tr."] at 101.)

Also on February 9, 2004, Host America gave K.W.M. a second check in the amount of $125,000. (Check, Ex. 3.) Witten on the memo line of that check are the words: "For 90 DAY NOTE." Host America's argument that this second check was also prepayment for the ENS boards was not persuasive. Rather, the evidence showed that this second check was a loan from Host America to K.W.M. In a letter dated July 8, 2004, written by Host America's controller, Lawrence W. Fusco, Mr. Fusco asked Mr. Stevenson about "a note payable to us [Host America]" dated February 11, 2004, and payable June 11, 2004 (which would be a ninety-day note). (Letter, Ex. K.) Neither party offered the note into evidence, but Host America did not dispute the existence of such a note.

### The Existence of an Agreement

The credible evidence convinced the court that there was no explicit agreement, written or oral, between Host America and K.W.M. concerning title to the ENS boards. The court has considered the testimony of Mr. Stevenson and Geoffrey Ramsey, an employee of Host America, that there was such an agreement, but this testimony was not persuasive, particularly in light of

various inconsistencies contained in the testimony.  For example, Mr. Stevenson had previously sworn that K.W.M. had completed manufacturing the ENS boards.  (Tr. at 59; Verified Compl., ¶ 12; Aff. of Charlie Stevenson, ¶5.)  These statements were simply not correct.

Similarly, Host America asserted that the agreement addressing when title to the ENS boards would pass was evidenced by an invoice attached to the Host America's Complaint.  (Invoice, Ex. A, attached to Aff. of Charlie Stevenson, Ex. 1.)  But no witness from Host America acknowledged creating the invoice.  Tracie Bailey, an employee of K.W.M. who was familiar with K.W.M.'s system for generating invoices, testified about the irregularities in the invoice.  It was clear from her testimony that K.W.M.'s computerized accounting system would not generate an invoice such as Exhibit A.  This evidence indicated to the court that the invoice was not authentic.

Another reality that undercut Host America's claim that K.W.M. transferred title of the ENS boards to Host America early in the transaction is the fact that, in May 2003, K.W.M. gave one of its creditors an interest in the ENS boards as security for a loan.  (Tr. at 78-79, 89-96).  To the court, this was evidence that K.W.M. considered the ENS boards its property, not Host America's.

The court also concludes that K.W.M. and Host America failed to agree when title to the Fansavers would pass.  In short, there was simply no credible evidence in the record that there was an explicit agreement addressing the transfer of title to the merchandise.

## **CONCLUSIONS OF LAW**

The court has subject matter jurisdiction because there is complete diversity of the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(2). The parties agree that venue is proper in this district.

Resolution of this lawsuit depends on whether, at the time Coastline took possession of the premises, K.W.M. or Host America owned the merchandise there; specifically, the ENS boards, the FanSavers, and all component parts. Two statutory provisions are central to this question. First, under Utah Code section 38-3-1, Coastline held a valid, perfected lessor's lien against K.W.M. This lien gave K.W.M. a preferred claim on all the personal property of K.W.M. kept on the premises. Second, The Utah Uniform Commercial Code reads: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Utah Code Ann. § 70A-2-401(2). As discussed, the court has found that the credible evidence leaves no doubt about the following: (1) Host America did not pay K.W.M. in advance for the ENS boards, (2) there was no agreement regarding when title to the ENS boards would pass, and (3) K.W.M. was far from completing its work on the ENS boards.

The court concludes that K.W.M. owned the ENS boards at the time Coastline seized the property and that Coastline's lien has priority over any claim of Host America.

**FanSavers**

There is no evidence of an explicit agreement concerning the FanSavers and the component parts that would alter the effect of the previously stated statutory provisions. "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."  Id.

Coastline contends that once the FanSavers and the parts were delivered to K.W.M., K.W.M. held title and Coastline's lessor's lien attached to the FanSavers and the parts. Host America disagrees, contending that the relationship between it and K.W.M., as regards the FanSavers, was in the nature of a bailment. Therefore, according to Host America, although K.W.M. had possession of the FanSavers, Host America was the owner. But the evidence does not support this contention.

K.W.M. had far more than "naked" possession of the FanSavers and the component parts. The evidence was clear that K.W.M. was to use the component parts supplied by Host America, along with additional parts to be purchased by K.W.M., to assemble the FanSavers. K.W.M. was also to update the design and engineering of the FanSaver. Only when all the work was complete would K.W.M. ship the completed products to Host America and receive full payment. The Tenth Circuit has recognized that a debtor has sufficient interest in collateral for a security interest to attach "where a debtor gains possession of collateral pursuant to an agreement endowing him with any interest other than naked possession . . . ." Kinetics Tech. Int. Corp. v. Fourth Nat'l Bank of Tulsa, 705 F.2d 396, 399 (10th Cir. 1983) (quoting Morton Booth Co. v.

Tiara Furniture, Inc., 564 P.2d 210, 214 (Okla. 1977).  Following this reasoning, K.W.M. had sufficient interest in the FanSavers and the parts so that Coastline's lessor's lien could attach. See also GMAC Bus. Credit, Llc. V. Ford Motor Co. (In re H.S.A. II, Inc.), 271 B.R. 534, 542-43 (Bankr. E.D. Mich. 2002), aff'd 2002 WL 32819769 (E.D. Mich. Sep. 30, 2002 (No. Civ. 02-70297), aff'd 100 Fed.Appx. 404 (6th Cir. June 3, 2004) No. 02-2292).

Accordingly, the court concludes that at the time Coastline foreclosed on its lien, K.W.M. owned the FanSavers and component parts and that Coastline's lien took priority over any interest of Host America.

## **DAMAGES**

Although the court agrees with Coastline that it is entitled to damages as a result of Host America taking possession of the ENS boards and the FanSavers (and the component parts of both products), neither party has adequately addressed the question of the appropriate amount of damages.  Accordingly, both parties are directed to file, on or before March 16, 2006, memoranda on the question of damages.  The parties are to cite to the trial transcript and to relevant case law in support of their positions.  The parties are not to reargue the issue of liability in their memoranda.  The memoranda are not to exceed ten pages.

SO ORDERED this 3rd day of March, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

9